**Norfolk**

CAROL J. HARDY, s/k/a

CARROLL J. HARDY

v.

COMMONWEALTH OF VIRGINIA

No. 0473-92-1

Decided February 8, 1994

678

Counsel

Stephen P. Givando, for appellant.

Janet F. Rosser, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

Opinion

**COLEMAN, J.**—Following a bench trial, Carol J. Hardy was convicted for possession of cocaine with the intent to distribute. The issues on appeal are (1) whether Hardy has standing to object to the search of the vehicle he was driving, and (2) whether the police conducted a valid consent search of the automobile's trunk. We hold that, although Hardy has standing to object under the Fourth Amendment, the police conducted a valid search of the automobile's trunk by virtue of the owner's consent to search. The evidence was sufficient to prove beyond a reasonable doubt that Hardy knowingly possessed cocaine. Accordingly, we affirm Hardy's conviction.

On October 13, 1990, Officer R. L. Henderson observed Hardy exiting from the driver's side of a parked blue Thunderbird. Knowing that Hardy's driver's license had been suspended, Henderson told Hardy not to drive. Hardy walked away. Officer Henderson found a plastic bag containing cocaine worth $500 approximately fifteen feet from the vehicle. Hardy did not object to the admission of evidence

that Officer Henderson found cocaine on the street the day prior to when he arrested Hardy, even though Hardy contends that the evidence has no probative value.

The following day, Henderson saw Hardy driving the Thunderbird. Henderson called for Hardy to stop. Hardy continued driving for 100 feet, stopped, and walked into an apartment building. Shortly thereafter, Hardy came out of the building, at which time Henderson asked him about driving on a suspended license. After Hardy replied, "you didn't see me drive," Henderson arrested him for driving on a suspended license. In searching Hardy incident to the arrest, Henderson found $435 in folded bills, including four one-hundred dollar denominations. He found no car keys on Hardy. Henderson noticed that the vehicle had no city decal. Henderson reached through an open window into the vehicle's glove compartment in order to obtain the vehicle's registration card.[1] Henderson determined that the car was registered to Reginald Elder, Hardy's brother-in-law. Henderson also noticed, in the front seat of the car, a television set that had its serial number removed. Henderson placed Hardy in his police car and called for back-up.

After other police arrived, Tamairo Daily, Hardy's girlfriend, came out from the apartment building and gave the police the keys to the Thunderbird. While Daily spoke to the police, Hardy yelled from inside the police car, "don't give them the keys." At this point, Reginald Elder appeared on the scene. He admitted that he owned the Thunderbird. He said that he had loaned it to Hardy for a few days. Elder consented to a search of the vehicle. As an officer opened the trunk, Hardy protested, "make him get a search warrant. Don't let them search the car." Elder then told the police to stop the search. After the police informed Elder that his car could be impounded, Elder said, "hell with it, go ahead and search the car."

When the police opened the vehicle's trunk, they discovered, located inside a distributor cap, a plastic bag containing cocaine. The bag contained thirty-three individually wrapped packets of cocaine, each worth twenty-five dollars. At Hardy's bench trial, Officer Henderson testified that possession of such a quantity of cocaine was inconsistent

---

[1] Hardy does not object to Henderson's search of the vehicle's glove compartment, conceding that it was a valid search incidental to the arrest. *See New York v. Belton*, 453 U.S. 454, 460 (1981).

with personal use. Hardy was convicted of possession of cocaine with the intent to distribute it.

## I. STANDING

■ A defendant can only claim a Fourth Amendment violation if he possesses a reasonable expectation of privacy in the object seized or the place searched. *Rakas v. Illinois*, 439 U.S. 128, 130 (1978); *Delong v. Commonwealth*, 234 Va. 357, 363, 362 S.E.2d 669, 672 (1987), *cert. denied*, 485 U.S. 929 (1988). An accused has standing to object to a search of an automobile only if he is the owner or in lawful possession of it. *See Josephs v. Commonwealth*, 10 Va. App. 87, 92-95, 390 S.E.2d 491, 493-96 (1990) (*en banc*).

■ Hardy had borrowed the Thunderbird from Reginald Elder, the registered owner. At the time of the search, Hardy had been in lawful possession of the vehicle for several days. The standing of a person to object to a search of a borrowed vehicle has not been decided by this Court. Other jurisdictions have uniformly held that the mere fact that a vehicle is borrowed does not diminish the borrower's reasonable expectation of privacy in it. *See United States v. Miller*, 821 F.2d 546 (11th Cir. 1987); *United States v. Portillo*, 633 F.2d 1313 (9th Cir. 1980), *cert. denied*, 450 U.S. 1043 (1981); *United States v. Williams*, 714 F.2d 777 (8th Cir. 1983).

The Commonwealth argues, however, that even if Hardy had a legitimate expectation of privacy in the automobile, he relinquished his privacy interests when he denied that he drove it and when he gave the car keys to his girlfriend. We disagree. Hardy, who had borrowed the vehicle, had standing to object to it being searched, and he had not abandoned it by giving the keys to his girlfriend.

■ An intent to retain or abandon an expectation of privacy is determined by objective standards and "may be inferred from words, actions and other objective facts." *Commonwealth v. Holloway*, 9 Va. App. 11, 18, 384 S.E.2d 99, 103 (1989). When Hardy stated that he never drove the car, the statement was not a disclaimer of an interest or possessory right to the vehicle. The statement did not affect Hardy's privacy interest in the car or car's trunk. Hardy manifested a continuing privacy interest in the trunk when he vehemently objected to the search of the trunk whenever a search seemed imminent. Furthermore, when he gave the car keys to his girlfriend, he ordered her not to give the keys to the police. He apparently had given the keys to the girlfriend in order to prevent access to the vehicle. Hardy's

act was not one of abandonment but rather was one in furtherance of maintaining his privacy interests in the vehicle.

In *Wells v. Commonwealth*, 6 Va. App. 541, 555, 371 S.E.2d 19, 26 (1988) (*en banc*), the defendant had no expectation of privacy in his vehicle when he abandoned it and fled on foot after being stopped by police. *Id.* Hardy, however, did nothing to indicate an abandonment of the vehicle. He voluntarily returned to the Thunderbird after being in his girlfriend's apartment and exercised dominion over it. Hardy's actions manifested an intent to retain his privacy interest in the vehicle. Thus, Hardy has standing to challenge the search of the car's trunk.

## II. CONSENT SEARCH

■ Even though Hardy, who had borrowed the vehicle, had standing as a bailee to object to the officer's searching the vehicle's trunk, the search was nevertheless valid because the owner-bailor of the vehicle consented to the search. A warrantless search of a motor vehicle without probable cause may nevertheless be valid as a consent search, provided that the person who consents has actual authority to do so. *United States v. Matlock*, 415 U.S. 164, 171 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). In this case, the dispositive question is whether an owner-bailor has authority to consent to a search of his vehicle despite an objection of the bailee where the bailment is at the will of the bailor. While no Virginia cases have addressed the issue, the other jurisdictions that have done so have held that "the property right of the owner" is "superior" to the bailee's temporary possessory right and expectations of privacy in the vehicle. *See, e.g., Anderson v. United States*, 399 F.2d 753, 756 (10th Cir. 1968). An owner of a motor vehicle may consent to a search of the vehicle over a bailee's objections if, at the time of the consent, the owner "was either in possession or entitled to possession" of the vehicle. *Id.* at 756-57.

An owner who allows another person to use his automobile retains ownership and the right to reclaim possession of the vehicle at will. While a bailee may have an expectation of privacy in the borrowed vehicle, that privacy interest is subordinate to the owner's right to his vehicle and right to reclaim possession of the vehicle at any time.

Reginald Elder was the registered owner of the Thunderbird. Elder had loaned the Thunderbird to Hardy for an indefinite time. Throughout the bailment, Elder was "entitled to possession" of the Thunderbird. When Elder arrived on the scene and gave his consent to

search his vehicle, he had the right to reclaim possession. When there is a bailment-at-will, the bailee in possession of property has an absolute duty to return it to the owner upon demand. *See Boyle v. Townes,* 36 Va. 158, 159 (1838). That Hardy protested when Elder consented to have his vehicle searched is immaterial. *See Mackall v. Commonwealth,* 236 Va. 240, 246, 372 S.E.2d 759, 763 (1988), *cert. denied,* 492 U.S. 925 (1989).

### III. SUFFICIENCY OF THE EVIDENCE

The evidence was sufficient to prove beyond a reasonable doubt that Hardy knowingly and voluntarily possessed the cocaine in the trunk of the Thunderbird.

> On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

*Martin v. Commonwealth,* 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Constructive "possession may be proved by 'evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of narcotics at the place where they were found.' " *Andrews v. Commonwealth,* 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975) (citations omitted). Occupancy of a vehicle where drugs are found is insufficient, standing alone, to support an inference of possession, Code § 18.2-248, but it is a circumstance which the fact finder may consider along with other evidence when determining whether a person knowingly possessed drugs. *Gillis v. Commonwealth,* 215 Va. 298, 301, 208 S.E.2d 768, 770-71 (1974). *See also Adkins v. Commonwealth,* 217 Va. 437, 229 S.E.2d 869 (1976) (defendant found to have knowingly possessed drugs in trunk and glove compartment of car he was driving).

Hardy was the sole occupant of the vehicle in which the drugs were found. Hardy had given his car keys to his girlfriend after seeing the police. When Hardy's girlfriend spoke with the police, Hardy yelled to her, "don't give them the keys." His actions and the words directed to her bespeak a guilty knowledge that drugs were present in the vehi-

cle's trunk.[2] Given that the car doors were unlocked and its windows were open, the keys were needed only if the police wanted to search the car's trunk. The fact finder could infer that Hardy had given the girlfriend the keys to prevent the officers from obtaining access to the vehicle's trunk, knowing that he had placed illicit drugs there. These facts support the trial court's finding that Hardy knowingly and voluntarily possessed cocaine. *See Robbs v. Commonwealth,* 211 Va. 153, 156, 176 S.E.2d 429, 431 (1970).

We affirm Hardy's conviction for knowing possession of cocaine with an intent to distribute.

*Affirmed.*

Baker, J., and Bray, J., concurred.

---

[2] Hardy does not contend that the words spoken to his girlfriend were the exercise of his Fourth Amendment right and, therefore, were the use of evidence of exercising a constitutional right to prove knowledge of the drugs or of his guilt.